

**FILED**
**Nov 13, 2024**
**09:36 AM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Leah Sullivan ) | Docket No.    2023-03-8156 |
| ) | |
| v. ) | State File No.  56326-2021 |
| ) | |
| Petree Arbor Lawn & ) | |
| Landscape, Inc., et al. ) | |
| ) | |
| ) | |
| Appeal from the Court of Workers' ) | |
| Compensation Claims ) | |
| Lisa A. Lowe, Judge ) | |

---

### Affirmed and Remanded

---

This interlocutory appeal focuses on an employee's request for the evaluation and treatment of a medical condition the employer claims was never reported as being within the scope of her work-related injuries. Following the accident, which was accepted as compensable, the employee received authorized treatment for her neck, chest, and right shoulder. She later requested treatment of her left shoulder, but the employer declined to provide such treatment, asserting her left shoulder condition was not part of the compensable claim. Following an expedited hearing, the trial court ordered the employer to provide authorized medical evaluation and treatment of the employee's left shoulder condition, and the employer has appealed. Upon careful examination of the record, we affirm the trial court's order and remand the case.

Presiding Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Judge Pele I. Godkin and Judge Meredith B. Weaver joined.

Tiffany B. Sherrill, Knoxville, Tennessee, for the employer-appellant, Petree Arbor Lawn & Landscape, Inc.

John R. Rosson, Knoxville, Tennessee, for the employee-appellee, Leah Sullivan

### Factual and Procedural Background

Leah Sullivan ("Employee") worked for Petree Arbor Lawn & Landscape, Inc. ("Employer"), as a project manager. On July 19, 2021, Employee was stepping out of a truck where she had been unloading mulch when she slipped and struck the truck with the

1

front of her upper body. The accident was accepted as compensable, and authorized medical treatment was provided. She was evaluated at American Family Care ("AFC"), and a July 21 report from that office indicated Employee complained of "chest pain" following a work-related accident. X-rays of the chest and ribs revealed no fractures. Employee was diagnosed with muscle and tendon strains of the front wall of the thorax, and the medical provider indicated these findings were "more than 51% work related." Employee was assigned temporary work restrictions for nine days.

On July 30, Employee returned to AFC with continued complaints of chest pain, as well as pain in her neck and right shoulder. X-rays of the right shoulder revealed no fractures. X-rays of the cervical spine showed normal disc spaces and no vertebral body fractures. Employee was diagnosed with "strain of muscle, fascia and tendon at neck level" and "strain of unspecified muscle . . . of shoulder and upper arm level, right arm." At that time, the provider ordered a CT of the chest and continued her light duty restrictions for another two weeks.

Significantly, in the July 30 report, the provider also noted the following with respect to Employee's medical complaints: "Relays now *both shoulders* are tender with reaching." (Emphasis added.) Following a physical examination, the provider noted, "Left shoulder cannot be abducted above 90 degrees, Tender along left supraspinatus muscle distribution atop scapula, [l]eft AC joint tender to palpation."[1]

On August 13, 2021, Employee returned to AFC and was seen by a physician's assistant, Steven Congress, under Dr. Batchelor's supervision. At that time, Employee was referred for physical therapy. On October 22, Dr. Batchelor referred Employee for an orthopedic evaluation "for right shoulder pain."

Employee eventually came under the care of Dr. Brian Holloway, an orthopedic specialist, for evaluation and treatment of her right shoulder. In his December 10, 2021 report, Dr. Holloway noted that Employee first complained of "pain in her chest and sternum on [the] left side." She also reported "pain, decreased motion and weakness" in her right shoulder. Dr. Holloway also stated that "[s]he was mostly sent for her right shoulder, but she [h]as also continued to complain of pain in that left sternocleidomastoid, left chest area."

During Dr. Holloway's physical examination, he noted that a "Jobe's test [was] negative left shoulder [and] positive right shoulder." He also observed "positive capsular irritation on the right." Dr. Holloway stated that Employee "does have just a little bit of asymmetry . . . of her sternoclavicular joint" and that she exhibited "just a little bit of tenderness near her left sternocleidomastoid and sternoclavicular joint." Dr. Holloway's

---

[1] The reports from AFC indicate that Employee was seen by a nurse practitioner, Laura Mathis, NP, and the report was electronically signed by Douglas Batchelor, M.D.

diagnosis as reflected in that report was "[a]dhesive capsulitis or frozen shoulder right shoulder after capsular strain, right shoulder with also some sternoclavicular joint sprain, looks like more on the left side." He described her condition as an "acute complicated problem." As a result, he recommended additional physical therapy in an effort to address the limited range of motion.

In January 2022, Employee returned to Dr. Holloway for follow-up care. At that visit, she stated her pain level had decreased to 3/10 in the right shoulder. During his physical examination, Dr. Holloway noted persistent and severe limitations in her range of motion on the right side "which has actually decreased even since last time." He noted that an MRI of her right shoulder was "basically unremarkable, although it does show thickening of the capsule consistent with a frozen shoulder." With respect to the issue of causation, Dr. Holloway opined that "it is a combination of both her shoulder injury with the underlying history of diabetes." He then commented that "the injury probably did trigger this frozen shoulder, so probably at least 50% is related to her Workers' Compensation injury." Dr. Holloway then proceeded with an injection in her shoulder and recommended she continue with therapy.

By May 2022, Employee reported that her right shoulder symptoms were improving. Dr. Holloway commented that she was "markedly better." The history section of his report did not indicate any complaints with respect to the left shoulder, and there is no indication in the report that he examined the left shoulder. At that time, Dr. Holloway placed Employee at maximum medical improvement and assigned her a permanent medical impairment rating of 3% for her right shoulder condition. He also released her to return to "full duty at work" as of May 21, 2022. He then completed a medical questionnaire in which he indicated that the work accident was the primary cause of her right shoulder condition. He wrote, however, that he "did not evaluate [left] shoulder" other than noting full range of motion, and that there was "no apparent [left] shoulder injury."

In January 2023, Employer authorized treatment with Dr. David Robbins due to Employee's complaints of neck pain and decreased range of motion. According to his January 30 report, Employee reported that these symptoms had persisted for more than one year and were related to the 2021 work accident. She denied suffering any other injuries since that time. During his physical examination, Dr. Robbins noted a loss of normal cervical lordosis but "no signs of external injury." Although Dr. Robbins did not have the cervical MRI films available for review, he noted that they were read as "unremarkable." Dr. Robbins diagnosed a sprain of cervical ligaments and recommended physical therapy. He restricted her work activities to lifting no more than 15 pounds. In his February 27 report, Dr. Robbins noted that Employee did not report any improvement following physical therapy. She described "sharp crampy pain" at a 9/10 level. Dr. Robbins encouraged her to continue with physical therapy but released her to return to work without restrictions.

3

Employee returned to Dr. Robbins in May 2023 and reported no improvement in her neck symptoms. Dr. Robbins noted some swelling and tenderness in the cervical region. Dr. Robbins concluded Employee had reached maximum medical improvement and prescribed a functional capacity evaluation ("FCE"). Later that month, he met with Employee again to discuss the results of the FCE, which indicated she could perform certain physical activities in the medium and light physical demand categories. He maintained his diagnosis of a ligament sprain and assigned a permanent medical impairment rating of 2% for her cervical condition. On August 9, 2023, Dr. Robbins signed a letter indicating that he had "nothing else to offer this patient."

In addition to medical proof, Employer also relied on certain factual statements that had been deemed admitted by a previous court order. Pertinent to this appeal, Employee admitted that no physician has opined that her left shoulder condition was primarily related to the work accident and no physician had indicated there was any need for additional medical treatment following maximum medical improvement.[2]

Following an expedited hearing, the trial court granted Employee's request for additional medical benefits. The court reasoned that an injured employee need not understand or appreciate the extent and nature of the work-related injuries at the time he or she gives notice of the accident to the employer. Moreover, although Dr. Holloway had reported "no apparent left shoulder injury," the court determined that Dr. Holloway did not have available for review complete medical records and, therefore, could not have properly considered all possible causes when providing his opinion. As a result, the court ordered employer to provide additional medical benefits, including "authorization for Dr. Holloway to evaluate [Employee's] left shoulder." Employer has appealed.

**Standard of Review**

The standard we apply in reviewing the trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2023). In circumstances where there is no witness testimony, "[n]o . . . deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes, rules, and regulations are questions of law that are reviewed de novo with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417

---

[2] During the expedited hearing, Employee attempted to introduce a report from Dr. William Daniel, who had evaluated Employee's left shoulder condition in July 2024 and offered a causation opinion. Employer objected to the introduction of this report because it was not timely submitted and was not electronically signed in contravention of the Bureau's admissibility rules. The court agreed and excluded Dr. Daniel's report. In response to separate objections, the court also excluded certain AFC records and physical therapy records that were not electronically signed.

4

S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2023).

**Analysis**

On appeal, Employer asserts that the only expert medical opinion addressing the cause of Employee's left shoulder condition was offered by Dr. Holloway, who replied in a medical questionnaire that there was "no apparent [left] shoulder injury." In support of this argument, Employer relies on our opinion in *Berdnik v. Fairfield Glade Community Club*, No. 2016-04-0328, 2017 TN Wrk. Comp. App. Bd. LEXIS 32 (Tenn. Workers' Comp. App. Bd. May 18, 2017). In that case, the treating physician had offered an opinion that the alleged work accident did not "contribute[] greater than 50% of her current condition." *Id.* at *5. The employee had offered no countervailing expert opinion, and we concluded that "the only medical opinion addressing causation contained in the record is contrary to Employee's position." *Id.* at *16. As a result, we stated "there is no authority to award benefits in the face of undisputed medical evidence that an injury did not arise primarily out of the employment." *Id.*

We conclude that the present case is distinguishable from *Berdnik* in several key respects. First, unlike the physician in *Berdnik*, in the present case, Dr. Holloway acknowledged that he had not evaluated Employee's left shoulder condition. Second, we disagree that Dr. Holloway's handwritten comment that there was "no apparent left shoulder injury" constitutes a causation opinion given his admission that he had not evaluated the left shoulder. Unlike the physician in *Berdnik*, Dr. Holloway did not express an opinion as to whether the work accident was more or less than 50% the cause of her left shoulder condition. To the extent that Dr. Holloway's statement could be construed to be a causation opinion, we conclude it did not address the necessary standards set out in Tennessee Code Annotated section 50-6-102(12).

Finally, it is unrefuted that Employee complained of pain and symptoms on both the right and left sides of her upper back and neck, including the shoulder regions, within two weeks of the accident. The fact that Dr. Holloway focused his attention on Employee's adhesive capsulitis in the right shoulder does not render her left-sided complaints of no significance. To the contrary, we conclude her complaints of left-sided symptoms within two weeks of the accident and her request for medical treatment triggered Employer's statutory obligation to offer medical treatment for that condition, at least to the extent an authorized provider concluded such treatment was reasonable and necessary as a result of the work accident. *See* Tenn. Code Ann. § 50-6-204(a)(1)(A) ("The employer . . . shall furnish . . . such medical and surgical treatment . . . made reasonably necessary by accident as defined in this chapter.").

5

In short, there is no statutory requirement that an employee identify every physical condition or symptom he or she believes is related to a work accident at the time notice of that accident is given. *Dyer v. PetSmart, Inc.*, No 2023-05-0917, 2024 TN Wrk. Comp. App. Bd. LEXIS 5, at *20-21 (Tenn. Workers' Comp. App. Bd. Mar. 1, 2024). As we explained in *Dyer*:

> Tennessee courts have consistently held that an employee is required to give timely notice of the accident but need not understand or appreciate the nature or extent of the injuries arising from that accident at the time notice is given. *See, e.g.*, *Matlock v. Ltv Steel, Inc.*, No. W2001-02512-SC-WCM-CV, 2002 Tenn. LEXIS 559 (Tenn. Workers' Comp. Panel Dec. 4, 2002) ("[W]e know of no requirement that an employee give notice of each and every injury he received in an on-the-job accident.").

*Id.* at *21.

Thus, given the unrefuted evidence that Employee complained of left-sided symptoms within two weeks of the work accident, and given that Dr. Holloway acknowledged he has not evaluated the left shoulder, we conclude the trial court did not err in ordering Employer to authorize a medical evaluation of the left shoulder by Dr. Holloway and any medical treatment for the left shoulder that Dr. Holloway deems to be reasonable and necessary as a result of the work accident.[3]

## Conclusion

For the foregoing reasons, we affirm the trial court's order and remand the case. Costs on appeal are taxed to Employer.

---

[3] To the extent that the trial court summarized in its order and relied upon Dr. Daniel's report, which was excluded during the hearing, we conclude any such reliance was harmless error, as there was other medical evidence admitted during the hearing that supported the trial court's order.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Leah Sullivan ) | Docket No. 2023-03-8156 |
| ) | |
| v. ) | State File No. 56326-2021 |
| ) | |
| Petree Arbor Lawn & ) | |
| Landscape, Inc., et al. ) | |
| ) | |
| ) | |
| Appeal from the Court of Workers' ) | |
| Compensation Claims ) | |
| Lisa A. Lowe, Judge ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 13th day of November, 2024.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Tiffany B. Sherrill | | | | X | tbsherrill@mijs.com<br>kpkudialis@mijs.com<br>mpbrown@mijs.com |
| John R. Rosson, Jr. | | | | X | rossonlaw@aol.com<br>rjoyce1960@aol.com |
| Lisa A. Lowe, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

_Olivia Yearwood_

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov